**SIGNED THIS: October 18, 2017**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | Case No. 17-90458 |
| Patricia Ann Awayda, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

# O P I N I O N

This matter is before the Court following a hearing on an Objection to Claim of Exemptions and a Motion for Turnover Order filed by Kristin Wilson, Chapter 7 trustee ("Trustee"). The Trustee challenges the Debtor's claimed exemption in proceeds from the sale of her homestead on the basis that the exemption could expire at a later date. Because the exemption was validly claimed as of the petition date, however, the Debtor is unconditionally entitled to the exemption regardless of any potential postpetition developments. The Trustee's requested relief will therefore be denied.

**I. Factual and Procedural Background**

Patricia Ann Awayda ("Debtor") filed her voluntary Chapter 7 petition on April 26, 2017. In her Statement of Financial Affairs, she disclosed that she had sold her residence at 1704 E. Fairlawn Drive in Urbana, Illinois, on April 21, 2017. The Debtor currently holds proceeds from the sale in the form of two undeposited checks, one for $9628.21 and the other for $1000. The Debtor claimed the full amount of both checks as exempt under the Illinois exemption for homestead proceeds. The Trustee filed an Objection to Claim of Exemptions and a Motion for Turnover Order, both asserting that the Debtor is not entitled to retain the proceeds from the sale of her residence as exempt. With respect to the exemption claim, the Trustee says that the statutory exemption is conditional and applies only when the homestead proceeds are reinvested in a new homestead within one year. The Debtor responded to the Trustee's objection, arguing that the exemption was properly claimed because homestead proceeds are fully and unconditionally exempt for one year after they are received.

With respect to the turnover request, the Trustee argues that when a debtor is holding prepetition proceeds from the sale of homestead property received within one year of filing, those funds should be turned over to the trustee for safekeeping until either the one-year period elapses or the debtor uses the proceeds to establish a new homestead. The Trustee bases this position on *In re Stewart*, which held that the exemption for homestead proceeds "should be allowed if the debtor reinvests the proceeds within the one-year period, but denied if reinvestment does not occur even though this determination must be made based upon what does or does not occur postpetition." *In re Stewart*, 452 B.R. 726,

745 (Bankr. C.D. Ill. 2011) (Perkins, J.).

The Debtor countered the Trustee's arguments, pointing out that this Court has previously held that debtors are unconditionally entitled to an exemption in homestead proceeds if the sale of the homestead property occurred less than one year prepetition. *In re Snowden,* 386 B.R. 730, 734 (Bankr. C.D. Ill. 2008). The Debtor also cites the bankruptcy court decision from the Northern District of Illinois that followed this Court's decision in *Snowden. See In re Lantz,* 446 B.R. 850, 860-61 (Bankr. N.D. Ill. 2011). Thus, the Debtor argues that, because the one-year statutory period had not elapsed as of the petition date, her exemption in the homestead proceeds is properly claimed regardless of anything that might occur after the petition date, and, accordingly, she should not be required to turn over the proceeds to the Trustee.

Both parties presented brief argument at a hearing held August 9, 2017. The matter is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters involving claimed exemptions in estate property and orders to turn over property of the estate are core proceedings. 28 U.S.C. §157(b)(2)(B), (E). The issues here arise directly from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall,* 564 U.S. 462, 499 (2011).

### III. Legal Analysis

One of the main purposes of bankruptcy laws is to "secure a prompt and effectual administration and settlement" of the bankruptcy estate "within a limited period." *Katchen v. Landy*, 382 U.S. 323, 328-29 (1966) (citation omitted); *Lantz*, 446 B.R. at 858. In Chapter 7, this is achieved by liquidating a debtor's non-exempt assets for the benefit of prepetition creditors. *See* 11 U.S.C. §704(a)(1). But there is a competing purpose in bankruptcy: protecting a debtor's fresh start. To that end, debtors are permitted to claim exemptions in property. 11 U.S.C. §522(b).

In this case, the Debtor has claimed an exemption under the provisions of Illinois law specifically related to homestead proceeds, which provides:

> When a homestead is conveyed by the owner thereof . . . the proceeds thereof, to the extent of the amount of $15,000, shall be exempt from judgment or other process, for one year after the receipt thereof, by the person entitled to the exemption, and if reinvested in a homestead the same shall be entitled to the same exemption as the original homestead.

735 ILCS 5/12-906.[1]

The Trustee does not dispute that Illinois exemption law applies here, that the funds in question are traceable to the sale of the Debtor's homestead, or that the sale occurred less than one year prior to the Debtor's bankruptcy filing. Rather, the Trustee focuses on the "one year" limit in the statute for the exemption of homestead proceeds and asks the Court to find that such limit makes the exemption conditional. The question before the Court, then, is whether

---

[1] Illinois law controls here because Illinois has opted out of the federal exemptions and requires its residents to use the Illinois exemptions in bankruptcy cases. 11 U.S.C. §522(b); 735 ILCS 5/12-1201.

entitlement to the exemption is determined as of the petition date or if post-petition activities, such as the acquisition of a new homestead or the expiration of the one-year period, affect the determination. An analysis of the provisions of both the Bankruptcy Code and the Illinois exemption statute is required to answer the question.

## A. The Snapshot Rule

The Supreme Court has explained that it is the date of filing when "the status and rights of the bankrupt, creditors and the trustee . . . are fixed." *White v. Stump*, 266 U.S. 310, 313 (1924); *see also Owen v. Owen*, 500 U.S. 305, 314 n.6 (1991). This approach has become known as the "snapshot" rule, which the majority of courts have held applies to the determination of exemption rights. *See, e.g., Lantz*, 446 B.R. at 858; *In re Oaks*, 2004 WL 950725, at *1 (Bankr. C.D. Ill. Apr. 26, 2004) (Perkins, J.); *In re Owens*, 269 B.R. 794, 796 (Bankr. N.D. Ill. 2001). Further, as this Court has previously noted, "[c]ourts interpreting Illinois exemption laws have traditionally followed a 'snap-shot' rule holding that exemptions are determined as of the date of a case filing." *Snowden*, 386 B.R. at 734 (citation omitted). As such, "[d]evelopments which occur after filing should not impact on the entitlement to an exemption properly claimed at filing." *Id.* (citation omitted).

The *Stewart* decision—upon which the Trustee heavily relies—construes the snapshot doctrine as a "discretionary rule of bankruptcy jurisprudence" that has been inappropriately used to "override a specific statutory carve-out from the constitutional preference for uniformity, that exemptions are to be determined by

state law." *Stewart*, 452 B.R. at 738. But this contention is not supported by statutory or case law.

The snapshot rule is not discretionary. It is an essential component of bankruptcy law that ensures consistency, efficiency, and finality in Chapter 7 cases. The *Stewart* decision cites circumstances in which the snapshot rule "is not universally applied" and some time other than the petition date is used in resolving issues arising in bankruptcy cases. *Stewart*, 452 B.R. at 739. The examples cited include certain postpetition claims being treated as though they arose on the petition date, some property becoming property of the estate if the debtor becomes entitled to it within 180 days postpetition, and actions to recover preferences and fraudulent transfers that have look-back periods ranging from ninety days to two years. *Id.* (citing 11 U.S.C §§502, 541(a)(5), 547, 548). The examples cited, however, are all express provisions of the Code in which Congress explicitly directed bankruptcy courts to calculate deadlines or look at circumstances arising at some time other than the petition date. These limited, enumerated exceptions do not support the claim that the general rule of evaluating property of the estate and claims of exemptions as of the petition date is discretionary. To the contrary, the fact that there are such expressly enumerated exceptions reaffirms that the snapshot rule is not discretionary.

The application of the snapshot rule has long been recognized by the Supreme Court. *See Owen*, 500 U.S. at 314 n. 6; *Myers v. Matley*, 318 U.S. 622, 628 (1943); *White*, 266 U.S. at 312-13. *Stewart* points to the Court's more recent decision in *Hamilton v. Lanning*, 560 U.S. 505, 524 (2010), instructing courts to account for "postpetition changes known or virtually certain to occur" when

evaluating a debtor's projected disposable income for purposes of a Chapter 13 plan. *Stewart*, 452 B.R. at 739. But *Lanning* dealt with a Chapter 13 case, which is fundamentally different from the Chapter 7 cases before the court in *Stewart* and before this Court here. Chapter 13 involves the calculation of a debtor's projected disposable income over three to five years after filing and, by definition, therefore requires an analysis of postpetiton income and expenses. Nothing in *Lanning*, however, suggests that its recognition of how disposable income should be calculated was intended to abrogate the long history of courts following the snapshot rule in Chapter 7 cases to fix property and exemption rights as of the date of filing.

In declining to apply the snapshot rule to the Illinois homestead proceeds exemption, the court in *Stewart* relied, in large part, on the Fifth Circuit's decision in *In re Zibman*, 268 F.3d 298 (5th Cir. 2001), interpreting the Texas law exempting homestead proceeds for six months following the sale of the homestead and holding that a trustee may reach the proceeds where the six-month exemption period elapses postpetition. According to the *Zibman* court, for the debtor to remain entitled to the exemption, the "essential element of the exemption must continue in effect even during the pendency of a bankruptcy case." *Zibman*, 268 F.3d at 301. But the Fifth Circuit recently curtailed its holding in *Zibman*, analyzing the same issues in the context of state law exemptions for retirement accounts. *Hawk v. Engelhart (Matter of Hawk)*, 871 F.3d 287 (5th Cir. 2017). In *Hawk*, the Fifth Circuit discussed the application of the snapshot rule, distinguishing between Chapter 7 and Chapter 13 cases. Specifically, the court stated that a new property interest acquired "after filing for bankruptcy becomes

part of the estate in a Chapter 13 case but does not become part of the estate in a Chapter 7 case, even if the debtor acquires the new property interest by transforming a previously exempted asset into a nonexempt one." *Id.* at 296. In other words, a debtor's right to claim an exemption in a Chapter 7 case is determined at the time of the filing of the petition.[2]

This Court has previously made known its disagreement with the *Zibman* decision, instead taking the view that the filing of the petition does create a "freeze" for purposes of determining exemptions. *Snowden*, 386 B.R. at 734. And this Court agrees that "[n]othing in section 522(c) even vaguely suggests that, as a precondition to enjoying the protections of that provision, the debtor must maintain the exempt character of the property." *In re Reed*, 184 B.R. 733, 738 (Bankr. W.D. Tex. 1995).

If the rule were that property must maintain its exempt status until case closure, Chapter 7 trustees would be incentivized to keep cases open as long as possible and to run out the clock on homestead proceeds exemptions and other exemptions with built-in time limits. Trustees might also hold cases open, waiting to see if debtors sell exempt property or withdraw funds from exempt accounts, only to seek turnover of proceeds or funds once converted to a non-exempt state. No policy is served by encouraging such activities, and the impact would be

---

[2] The *Hawk* court did ultimately conclude that "freezing" what it deemed to be a "conditional" exemption for proceeds at the time of the petition would read the time limitations out of the Texas statute and opined that if the exemption were to lapse before the deadline for objecting to the debtor's claim of exemption, then a timely objection from the trustee would be properly sustained. *Id.* at 296. But, even under this view, if the exemption would not lapse within the time allowed for objections, and the period were not extended, then a trustee could not contest the validity of the exemption. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 643-44 (1992).

impractical, inefficient, and contrary to the Code's command that trustees close cases "expeditiously." 11 U.S.C. §704(a)(1).

In *Law v. Siegel,* 134 S. Ct. 1188 (2014), the Supreme Court considered the relationship between state law exemptions and the Bankruptcy Code. *Law* involved a Chapter 7 trustee's efforts to equitably surcharge a debtor's exempt property—a form of relief not authorized in the Bankruptcy Code—as compensation for expenses the estate incurred due to the debtor's misconduct. *Law,* 134 S. Ct. at 1193. Concluding that such "equitable" surcharge of exempt assets was improper, the Court noted the longstanding principle that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Id.* at 1194, 1197 (citations omitted). The Court further stated that the federal exemption statute "does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate." *Id.* at 1196.

It is true, as the Court noted, that "when a debtor claims a state-created exemption, the exemption's scope is determined by state law[.]" *Id.* at 1196-97. "But federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code." *Id.* at 1197. Whatever basis there may be for disallowing homestead proceeds exemptions must therefore arise from state law. The snapshot rule merely controls the moment in time upon which a debtor's right to claim exemptions is based and what state laws apply to the facts as they are at that time. Here, the exemptions the Debtor is entitled to are determined solely by Illinois law. And, absent specific statutory authority, the Debtor should not be deprived of her exemptions by this Court reading into the Code a provision

that exemptions need not be determined as of the date of filing or can be considered conditional and subject to postpetition divestiture. *See Law*, 134 S. Ct. at 1196-97.

In summary, the snapshot rule applies to the determination of what property is property of a debtor's estate and what property may be claimed as exempt. Whether estate property claimed as exempt may actually be exempt, however, is controlled by the applicable exemption laws—in this case, the Illinois exemption statute. Thus, only when applicable Illinois law provides an express provision limiting the availability of an exemption may the exemption be so limited. As discussed below, Illinois law does not limit the availability of an exemption in homestead proceeds as asserted by the Trustee.

### B. The Illinois Exemption in Homestead Proceeds

In considering issues of state law, bankruptcy courts should first look to the highest court of the state for binding or direct precedent. *MindGames, Inc. v. Western Publishing Co.*, 218 F.3d 652, 655-56 (7th Cir. 2000). In the absence of any direct authority, this Court must predict how the Supreme Court of Illinois would interpret the Illinois statute. *Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004). In doing so, the basic task "is to ascertain and give effect to the intent of the legislature." *People v. Donoho*, 204 Ill. 2d 159, 171, 788 N.E.2d 707, 715, 273 Ill. Dec. 116, 124 (2003). The best evidence of legislative intent is the text of the statute itself, which should be applied according to its plain and ordinary meaning unless doing so would lead to absurd results. *Id.*; *see also Croissant v. Joliet Park Dist.*, 141 Ill. 2d 449, 455, 566 N.E.2d 248, 251, 152 Ill. Dec. 561, 564

(1990).

Although there is a lack of Illinois decisions directly on point, the court in *Stewart* interpreted §12-906 as a single exemption subject to three conditions: "(1) the proceeds must remain segregated or at least traceable, (2) the proceeds must actually be reinvested in a new homestead, and (3) the reinvestment must occur within one year." *Stewart*, 452 B.R. at 736. In other words, under *Stewart*, proceeds from the sale of a homestead are never fully exempt; only after the proceeds have been reinvested and the actual asset purchased by a debtor is a new homestead is there an unconditional exemption.

But such a construction is contrary to Illinois law. A debtor is entitled to a $15,000 exemption in a homestead. 735 ILCS 5/12-901. A separate and distinct exemption relates to homestead proceeds and protects such proceeds "to the extent of the amount of $15,000 . . . for one year after the receipt thereof[.]" 735 ILCS 5/12-906. A second part of the homestead proceeds exemption applies if the proceeds are "reinvested in a homestead," in which case the new homestead "shall be entitled to the same exemption as the original homestead." 735 ILCS 5/12-906; *see Lantz*, 446 B.R. at 856. In other words, once the reinvestment is made, an exemption is again available under §12-901. Were it as *Stewart* suggests, the homestead proceeds exemption would not be an exemption at all. Rather, it would merely be a safe harbor provision that bridges the gap between homestead exemptions under §12-901. But this construction undercuts the essence of §12-906, which is to provide an actual exemption in the proceeds from the sale of a homestead. Had the legislature intended to provide for only a one-year grace period to reinvest in a new homestead rather than an actual exemption in

proceeds, it would have said so. This Court declines to read into the statute what is not there.

Nothing in the text of §12-906 suggests that it is a conditional exemption that is only valid if, in the future, the funds are used to acquire a homestead. The plain meaning of the statue merely indicates that homestead proceeds are exempt during the year following transfer of the homestead. And if a debtor chooses to use the proceeds to purchase a new homestead, the new homestead will enjoy the same protection as the original homestead. Nothing in §12-906 limits how a debtor might actually use the proceeds. Debtors do not and should not lose the exemption in homestead proceeds by spending portions of the proceeds for rent or temporary housing, or even if portions of the funds are "frittered" away. *In re Ziegler*, 239 B.R. 375, 377-78 (Bankr. C.D. Ill. 1999) (Altenberger, J.). This interpretation is consistent with the purpose of this particular exemption provision, as well as the exemption statute as a whole.

Illinois courts have described the homestead exemption as protecting not only financial investments but also the ability to maintain housing, without respect to whether the housing is permanent or temporary. As stated by one court, "[t]he purpose of the homestead exemption is to provide the debtor with the necessary shelter or the means to acquire shelter required for his welfare during difficult economic circumstances[.]" *Bank of Illmo v. Simmons*, 142 Ill. App. 3d 741, 745, 492 N.E.2d 207, 211, 97 Ill. Dec. 4, 8 (1986) (citation omitted). This purpose is clearly served by allowing the homestead proceeds exemption to be used for temporary housing. Further, the homestead exemption itself applies to property "rightly possessed by lease," so it stands to reason that the proceeds exemption

can apply to or be used for leased property. 735 ILCS 5/12-901. But, again, that is not to say that use of the proceeds exemption is limited to obtaining housing.

Interpreting the purpose of §12-906 as being limited to temporarily preserving the value of a debtor's homestead exemption under §12-901 only so that it can be reinvested in another homestead, the *Stewart* court relied on the analysis of *People v. Stitt*, 7 Ill. App. 294 (1880), by the bankruptcy court in *Ziegler* that read into the statute a condition that, for proceeds to be exempt, there must be an intent to acquire a new homestead. *Ziegler*, 239 B.R. at 379. But *Stitt* merely states that "it was the intention of the legislature to protect a party in his homestead" and "the money received in exchange for the homestead . . . until, at least, it could be re-invested according to the statute." *Stitt*, 7 Ill. App. at 300. *Stitt* says nothing about conditioning the one-year protection of the sale proceeds on the funds actually being used to purchase a new homestead.

The *Stewart* decision was largely guided by the reinvestment language in §12-906. There, the court reasoned that:

> To say that the legislature intended the homestead proceeds to be unconditionally exempt for one year so that the funds could be expended for any (nonhomestead) purpose whatsoever, flies in the face of the language of the statute, its purpose as defined by Illinois courts, its location in the statute as part of the homestead exemption law, and its real-world context as a mechanism to facilitate the transfer of exempt equity value from one home to the next.

*Stewart*, 452 B.R. at 735. This Court respectfully disagrees.

The plain language of §12-906 places no limits on how sale proceeds are used during the one-year period following the sale. "Although the statute makes reference to reinvestment, the reinvestment is not a condition to the exemption." *Lantz*, 446 B.R. at 855. And while "a court must be mindful to avoid interpreting

-13-

[statutes] in a way not contemplated by the legislature in enacting a state's exemption scheme[,]" the Illinois exemption statutes are to be construed liberally in the debtor's favor where possible. *In re Simpson*, 238 B.R. 776, 778-79 (Bankr. S.D. Ill. 1999) (citations omitted); *In re Barker*, 768 F.2d 191, 196 (7th Cir. 1985) (citing *Matter of Schriar*, 284 F.2d 471, 473-74 (7th Cir. 1960)); *People v. One Residence Located at 1403 E. Parham St.*, 251 Ill. App. 3d 198, 201-04, 621 N.E.2d 1026, 1029-31, 190 Ill. Dec. 573, 576-78 (1993). If the aim of §12-906 is to "facilitate the transfer of exempt equity value from one home to the next" by protecting that equity value from creditors, this Court's reading of the statute furthers that goal.

As this Court pointed out in *Snowden*, some debtors have sold their homes voluntarily while others have been forced to sell because of marriage dissolution, condemnation, partition, or threat of foreclosure. *Snowden* 386 B.R. at 733. Some debtors may have the intent and desire to acquire a new homestead but not the means or opportunity to do so. And, certainly, a trustee in a pending bankruptcy having a conditional interest in the funds necessary to make a down payment for the purchase of a homestead would hinder most debtors from being able to obtain a mortgage and complete a purchase. Likewise, allowing a trustee to take control of such funds would hinder a debtor's ability to pay for rental housing, even though acquiring such housing is clearly within the scope of the policy considerations underlying the exemption statute.

Reading §12-906 in the context of the entire statutory scheme does not command a different result. As the court in *Stewart* points out, the homestead proceeds exemption "is inextricably tied to the primary homestead exemption and

has been interpreted in that context." *Stewart*, 452 B.R. at 734. And the Seventh Circuit has held that individuals cannot be compelled to turn over and vacate homestead property unless they are first paid the value of their homestead exemption. *Matter of Szekely*, 936 F.2d 897, 903 (7th Cir. 1991). Requiring turnover of homestead property without first paying the cash value of the homestead exemption "undermine[s] the purpose of the exemption, which is to assure the debtor adequate housing despite the economic disaster that has overtaken him." *Id.* at 902. There is no requirement that a debtor's homestead proceeds from an involuntary sale by a trustee be used to reinvest in a new homestead. And if an individual chose to use such money for purposes unrelated to housing, the individual would be entitled to do so—the right is unconditional. It therefore follows that the use of the exempt proceeds from the prepetition sale of a homestead is likewise unconditional.

Section 12-906 undoubtedly encourages reinvestment of homestead sale proceeds into a new homestead. At the very least, it gives individuals a one-year window in which they can look for affordable housing without fear of losing the sale proceeds to their creditors. And if an individual chooses to use those funds to obtain housing, then the continued protection of the homestead exemption remains in place. But if that individual were to squander the sale proceeds on purchases unrelated to housing, then the protections would lapse after the one-year period, and the purchased property could be available to satisfy debts not part of a pending bankruptcy.

But what if a creditor sought to enforce a judgment in state court before the one-year period under §12-906 had expired? According to *Lantz*, a judgment

creditor could not "compel application of the homestead proceeds against their debt" if the one-year period under §12-906 had not expired at the time of those proceedings. *Lantz,* 446 B.R. at 859. *Stewart,* on the other hand, predicted that "final adjudication would be deferred until reinvestment happened or the one-year period expired, whichever occurred first." *Stewart,* 452 B.R. at 737.

Illinois law regarding enforcement of judgments favors speedy resolution of exemption claims. When a judgment debtor asserts the right to an exemption, the clerk of the court must "obtain a prompt hearing date" and the court must "immediately . . . proceed to determine whether the property the judgment debtor declares to be exempt is exempt from judgment." 735 ILCS 5/2-1402(l). And, although Illinois law allows judgment creditors and courts to prohibit judgment debtors from transferring property potentially subject to execution while supplemental proceedings are pending, exempt property is specifically excluded from those restraining provisions. 735 ILCS 5/2-1402(f), (l). *Stewart* seems to imply that a state court could preclude a judgment debtor from using or transferring property while it is still exempt, which is not the case. Thus, the *Lantz* court appears to have made the correct analysis. Illinois law provides no basis for a state court to put a hold on otherwise exempt property to secure the property for a creditor on the expectation that the property will lose its exempt status in the future.

## IV. Conclusion

Under the Bankruptcy Code, a debtor's claimed exemptions in property are typically evaluated based on the circumstances as they exist on the petition date.

Illinois law provides that debtors are entitled to an exemption in homestead property or in proceeds from the conveyance of that property. The proceeds exemption exists so that debtors have access to adequate housing, whether temporary or permanent, during times of economic difficulties. This exemption is valid for only one year, but, in a bankruptcy case, if the exemption is in effect on the petition date, debtors are entitled to the full benefit of the exemption regardless of circumstances occurring after the petition date. In this case, the one-year period had not elapsed prior to the petition date, so the Debtor is entitled to unconditionally claim her homestead proceeds as exempt. The Trustee's Objection to Claim of Exemptions will be overruled and her Motion for Turnover Order will be denied.

      This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

      See written Order.

###